IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HUMPHREYS & PARTNERS ARCHITECTS, LP,<br><br>　　　　　Plaintiff,<br><br>　　　vs.<br><br>COMMERCIAL INVESTMENT PROPERTIES, INC., STUDIO951, LTD. et al.<br><br>　　　　　Defendants. | **4:19CV3046**<br><br>**MEMORANDUM AND ORDER** |

　　　Pending before me is the motion filed by Plaintiff Humphreys & Partners Architects, LP ("HPA") for an order compelling Defendant Commercial Investment Properties, Inc. ("CIP") to respond to written discovery requests. (Filing No. 75).

## STATEMENT OF FACTS

　　　HPA is an architectural firm. As relevant to this case, CIP develops and manages apartment complexes. In 2000 and 2002, HPA created architectural design plans to build two "Big House" apartment complexes for CIP. Thereafter, CIP allegedly used HPA's copyright-protected "Big House" apartment plans, or derivatives of those plans, to build additional apartment complexes in Lincoln and Omaha in violation of HPA's copyrights. The alleged "infringing buildings" are 10- and 11-unit buildings with private entries located within Wilderness Ridge, Falling Water, North Pointe Villas, Butler Ridge, and Mahoney Park apartment complexes in Omaha and Lincoln, Nebraska.[1]

---

[1] The discovery requests are not, as written, limited to the 10- and 11-apartment buildings. HPA's briefing clarifies that it is limiting its requests to those buildings. (Filing No. 76, at CM/ECF pp. 6, 11).

HPA served written discovery on CIP, and CIP timely objected to some of the requests, arguing the information requested is wholly irrelevant and production would be disproportionate to the needs of the case. Those objections were targeted at HPA's discovery seeking information regarding the money CIP received and continues to receive from the building owners or others, the amount of rent generated by the Big House apartments, and copies of any contracts between CIP and the owners of those apartments.

HPA seeks an order compelling CIP to respond to Interrogatory Nos. 7 and 8 and Requests for Production Nos. 4, 15, 16, 23, 24, 27, 36, 37, 41, 50, 51, 55, 64, 65, 69, 78 and 79. Interrogatories 7 and 8 request the "total rent received by CIP each month for rentals at Villas at Wilderness Ridge since the date units were first rented," and aside from rent, the total revenue CIP received. (Filing No. 77-3, at CM/ECF p. 77-78). As to the alleged infringing properties at each of the five apartment complexes, HPA requests documents showing the monthly rental rates (Requests 23, 36, 50, 64, and 78); monthly rental income (Requests 24, 37, 51, and 79);[2] and revenue received (Requests 27, 41, 55, and 69).[3] It further requests all documents stating and explaining the calculation of any revenue received by CIP and arising from infringing properties at Villas at Wilderness Ridge, including rental income and/or sales revenue, and all contracts or agreements between CIP and anyone related to the design or marketing of those apartment buildings. (Requests 4, 15, and 16).

---

[2] The parties appear to agree that Request 65 asks for monthly rental income. However, the court did not locate that request in the record. See Filing No. 77-4, at CM/ECF pp. 15-16.

[3] These requests, as written, appear to be directed to documents reflecting revenue received by co-defendant Studio951, LTD. That may be a typo; that is, perhaps HPA intended to request documents reflecting revenue received by CIP, not Studio 951. For the purposes of this memorandum and order, and to avoid the need to address the issue again if corrected discovery is served, the court will assume Requests 27, 41, 55, and 69 seek documentation of revenue received by either or both CIP or Studio 951 from the building owners referenced in these requests.

HPA argues that it needs the requested discovery to prove damages arising from CIP's alleged violation of HPA's copyright. CIP objects to the discovery, arguing rental revenue is irrelevant because CIP, as property manager, does not retain the rental income generated from the property; any management fee earned by CIP for the alleged infringing properties is not attributable to the alleged infringement; while CIP has limited its requests to 10- and 11-unit buildings, the requests are still overbroad because the designs at issue were for only 10-unit buildings; HPA has not served requests for production of contracts between CIP and the owners of the alleged infringing properties; and CIP has already produced the marketing and design documents for Wilderness Ridge responsive to Requests 15 and 16.

## DISCUSSION

A.    Standard of Review

Rule 26(b)(1) of the Federal Rules of Civil Procedure, amended on December 1, 2015, limits the scope of discovery to:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Courts must examine each case individually to determine the weight and importance of the proportionality factors.

The burden of demonstrating the proportionality of the requested information is a collective responsibility between the parties and the court. But the party requesting discovery bears the initial burden of showing how the requested information is important to the issues and resolution of the case. A party requesting discovery must present a threshold showing of relevance before parties are required to "open wide the doors of discovery" and "produce a variety of information which does not reasonably bear upon the issues in the case." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir.1992).

Discovery requests are considered relevant if there is any possibility that the information sought is relevant to any issue in the case. Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case. See Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir.1972). "While the standard of relevance in the context of discovery is broader than in the context of admissibility, . . . this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery." Hofer, 981 F.2d at 380.

B.  Analysis

HPA claims the requested discovery is relevant to prove its damages. In actions against a copyright infringer, a copyright owner may recover actual damages along with any profits attributable to the infringement, provided those profits were not already included as part of any actual damage assessment. "Damages are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefiting from a wrongful act." H.R. REP. 94-1476, 161 (1976). When establishing the infringer's profits, the copyright owner is required to prove the infringer's gross

revenue, and then the infringer must prove any deductible expenses. 17 U.S.C. § 504(b). "The recovery of profits attributable to the infringement in addition to actual damages is designed to ensure that infringers are not able to retain some benefit flowing from their wrongful conduct that is not fully taken into account in the award of actual damages." U.S. Payphone, Inc. v. Executives Unlimited of Durham, Inc., 781 F. Supp. 412, 413 (M.D.N.C. 1991).

CIP cites Home Design Servs., Inc. v. Turner Heritage Homes, Inc., 101 F. Supp. 3d 1201, 1218 (N.D. Fla. 2015), aff'd, 825 F.3d 1314 (11th Cir. 2016); Thomson v. HMC Grp., 2015 WL 11256775, at *14 (C.D. Cal. Oct. 29, 2015); Interplan Architects, Inc. v. CL Thomas, Inc., 2010 WL 4065465, at *7 (S.D.Tex. Oct.9, 2010); and Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc., 262 F. Supp.2d 923 (N.D. Ill. 2003) in support of its claim that the discovery of rental charges, collected rent, and revenue is irrelevant. CIP argues these cases hold that HPA cannot seek recovery of the fees and revenue it collected from developing and managing the alleged infringing properties because such damages are, as a matter of law, not attributable to the alleged infringing conduct. As such, CIP argues HPA cannot meet its burden of showing how discovery directed at explaining the amounts CIP collected and retained and how those payments were calculated is relevant, and its discovery objections must therefore be sustained.

The undersigned magistrate has read the cases cited by CIP. As is typical when considering whether a causal link exists between unlawful conduct and requested damages, the outcome of each case rests on a fact-specific analysis. The court notes that Home Design, Thomsen, and Interplan Architects do not discuss whether discovery should be permitted. Rather, they decide whether the plaintiffs presented a sufficient factual basis to: set aside an unfavorable jury verdict on the issue of recovering defendant's profits (Home Design, 101 F. Supp. 3d at 1218), oppose defendant's summary judgment motion on that issue,

5

(Thomson v. HMC Grp., 2015 WL 11256775, at *14), or successfully respond to a Daubert motion challenging Plaintiff's expert testimony regarding defendant's profits allegedly attributable to the infringing conduct, (Interplan Architects, 2010 WL 4065465, at *4).

In each of these cases, the court rendered factually supported opinions after the parties were afforded an opportunity to conduct discovery. In Home Design, the court upheld a jury verdict denying recovery of a defendant's profits because the defendant had presented evidence that any profits it received were not attributable to the infringing designs but rather to rapidly rising land values, property location, square footage, curb appeal, interior detailing, and quality of construction. "Based on this testimony, the jury reasonably could have found that Defendants' profits were attributable to factors other than the infringing home designs." Home Design, 101 F. Supp. 3d at 1218. In Thomsen, the court granted Defendant's motion for summary judgment on the issue of recovering profits because in response to the motion, the copyright holder failed to "proffer any evidence to create a triable issue regarding whether the infringement at least partially caused the profits that the infringer generated as the result of the infringement." Thomson v. HMC Grp., 2015 WL 11256775, at *14). And in Interplan Architects, the court excluded an expert opinion stating all revenue received by an owner from operating the infringing properties was profit arising from the copyright violation because the plaintiff failed to show the revenue generated was "caused or in some way affected by the architectural designs of the Infringing Stores." Interplan Architects, 2010 WL 4065465, at *4.

Ocean Atlantic discussed a discovery dispute, but like Home Design, Thomsen, and Interplan Architects, the dispute was decided based on facts specific to that case. In Ocean Atlantic, plaintiff Ocean Atlantic created plans to develop a village. Those plans were adopted by the village, but Ocean Atlantic

could not implement the plans because it failed to timely purchase the real estate necessary to start the project. After another developer acquired the rights and developed the real estate parcel in accordance with the copyrighted village plans, Ocean Atlantic sued the developer, alleging it was entitled to not only its actual damages for use of the copyrighted plans, but also recovery of all revenue the developer received for developing the village. Ocean Atlantic requested extensive discovery, including the developer's business and financial records for carrying out the plans for developing the village. The developer objected, claiming the discovery was not relevant because Ocean Atlantic could not recover the developer's profits. The court sustained the objection, concluding that under the facts presented, Ocean Atlantic's lost profits were attributable to its own failure to timely purchase the required real estate and not to the developer's use of the development plans.

Here, HPA alleges it created designs for apartments with private entrances and garages located within a "Big House" building that appears to be a stately residence. (Filing Nos. 77-5, 77-6, 77-7, and 77-8). HPA argues CIP profited from using HPA's copyrighted designs to develop these apartment buildings and thereafter received, and continues to receive, fees for managing the apartments. Based on the evidence before me, although CIP does not own the apartment buildings and it collects but does not keep the rental income, CIP does receive a property management fee of 4.5-5% of the total rent received as compensation for managing the properties. (Filing No. 80-1, at CM/ECF p. 2). The development and management fees are therefore arguably attributable to CIP's use HPA's copyrighted designs. See Interplan Architects, 2010 WL 4065465, at 5 (holding that the gross revenue received by architects who used the plaintiff's architectural designs could include all amounts the defendant architects received for their design and drafting work to build the infringing properties). Once HPA shows the amount of gross revenue received by CIP and some causal link between that

revenue and the infringement, CIP then bears the burden of showing that the revenue was attributable to factors other than the copyrighted work. Id.

CIP argues the amount of rent charged and paid and the revenue collected from the alleged infringing buildings is not relevant because CIP does not own those buildings and does not keep the rent it collects on behalf of the owners. But CIP is not paid a fixed amount (e.g., $50.00 per apartment) for managing the apartments within the alleged infringing buildings. Its management fee is calculated as a percent of rent paid (revenue received). Therefore, the amount of rent charged and collected, and the revenue received, is part of the equation for calculating CIP's gross revenues arising from renting the alleged infringing properties. While CIP claims its management fee percentage is the same irrespective of the property it is managing, and the fee is therefore not attributable to the building design, given the advertising associated with the "Big House" rental, the facts garnered through discovery may show that the rent charged and collected is more, and the level of vacancy less, for "Big House" apartments than for other apartments of similar size. See e.g. Andreas v. Volkswagen of Am., Inc., 336 F.3d 789, 799 (8th Cir. 2003) (affirming an award of profits, concluding a fact finder could conclude a causal connection exists between an infringed advertising slogan and the revenue from selling cars advertised with that slogan). Moreover, under the facts presented, a fully developed record is needed when deciding whether gross revenues from the Big House apartments are attributable to infringing on HPA's designs. With discovery in hand, each side can then offer evidence as to the amounts attributable to the alleged design infringement, with the defendant bearing the burden of establishing the elements of profit attributable to factors other than the copyright work. Id; see also, Home Design, 101 F. Supp. 3d at 1218.

CIP asserts HPA's discovery requests are overbroad because the design at issue was for only 10-unit buildings. It argues that "[a]lthough CIP disputes that

[HPA] is entitled to any discovery related to rental income or its management fee, to the extent the Court is inclined to compel such discovery it should be limited to 10-unit buildings. There is no basis for [HPA] to request discovery regarding 11-unit buildings (or any other) because [HPA's] alleged copyrights are only for 10-unit buildings." (Filing No. 79, at CM/ECF p. 13). HPA argues "[t]he mere fact that a building contains 11-units rather than 10-units does not mean that it was not copied from HPA's designs. For example, taking HPA's design and sticking an extra unit on the end would still be copying. At this stage of the proceedings, the Court should require CIP to produce the requested information on all 10-unit and 11-unit buildings as shown on Exhibit 9." (Filing No. 85, at CM/ECF p. 8 (referencing Filing No. 86-1)).

Like the assessment of attributable profits, deciding whether the 11-unit building is based on a different design or is a mere expansion of the 10-unit Big House design presents a complex issue of fact. "The test for substantial similarity for architectural works is 'whether a reasonable jury could find the competing designs substantially similar at the level of protected expression.'. . . [S]pacial depictions of rooms, doors, windows, walls, etc.' are not protected. . . . '[O]nly the original, and thus protected arrangement and coordination of spaces, elements and other staple building components should be compared.' . . ." Home Design Servs., 101 F. Supp. 3d at 1212 (internal citations omitted).

At this stage of the case, the court will not embark on deciding whether the 10- and 11-unit buildings are substantially similar in design, and it will not limit HPA's discovery to 10-unit buildings, particularly in the absence of any showing that responding to the 11-unit discovery requests will be unduly burdensome.

Additionally, HPA moves to compel CIP to "provide a copy of any contract that it has with the owners of any of the 5 properties at issue." (Filing No. 75, at

CM/ECF p. 2). Request 4 seeks documents explaining "any revenue received by CIP from any unit at Villas at Wilderness Ridge, including rental income and/or sales revenue," and for "each element of revenue, produce all documents showing how such element was calculated, the source documents for each such calculation, and documents sufficient to show the date each calculation was prepared." Requests 27, 41, 55, and 69 seek "documents stating any revenue received by [the defendants][4] related to" the Villas at Falling Water, the Villas at Mahoney Park, North Pointe Villas, and the Villas of Omaha at Butler Ridge, respectively. Certainly as to the Villas at Wilderness Ridge, HPA has requested any written agreements explaining how the fees received by CIP were calculated. But Requests 27, 41, 55, and 69, even as re-interpreted to address revenue received by CIP, Studio 951, or both, do not encompass any underlying contracts explaining how the amounts paid were calculated. I cannot compel CIP to provide something that has not been requested. However, for the reasons outlined when addressing requests for rent charged and paid, I will order CIP to fully respond to Request 4. And if Requests 27, 41, 55, and 69 are re-drafted by HPA to incorporate the language of Request 4 and then re-served, CIP can now easily foresee how this court will rule if HPA must move to compel CIP's responses to these newly served requests.

Requests 15 and 16 demand production of all contracts or agreements between CIP and any person or entity related to the design and marketing of Villas at Wilderness Ridge. CIP did not object to these requests. In response to the pending motion to compel, it states

> CIP has already produced substantial documents related to the design/marketing of Wilderness Ridge, including the production of contractual agreements related to such marketing efforts at Bates Label No. CIP 000311-653. (Filing No. 77, Ex. 2). However, there are no contractual agreements between CIP and the Subject Properties' entity owners relating

---

[4] See footnote 3, supra.

10

> to the "design" of Wilderness Ridge. Further, to the extent any such contracts exist that are responsive to Plaintiff's requests, CIP is producing or has produced such contracts to Plaintiff and will continue to respond on a rolling basis to Requests 15 and 16.

(Filing No. 79, at CM/ECF p. 14).

> HPA is not convinced or satisfied with CIP's response, explaining:
>
> > CIP . . . claims that Request 15, which seek contracts related to the design and marketing of Wilderness Ridge, that no contract exist related to "design." If there was no contract related to how Wilderness Ridge would look, then who was CIP developing the property for? Itself? CIP's argument does not make any sense. If CIP developed this property for a third party, that contract is discoverable as it goes to the revenue received by CIP. Moreover, CIP attempts to confuse the issue by stating there are no contracts related to "design." It conveniently does not address the "marketing" portion of Request No. 16. CIP has not produced any contract with any owner related to marketing. The argument that "it has produced other documents" is not a legal argument, but an attempt to hide the actual documents requested

(Filing No. 85, at CM/ECF p. 8-9).

Absent an evidentiary hearing, the court cannot decide whether a party possesses but is withholding responsive documents, and it cannot order a party to produce documents it does not have. But the court can require CIP to explain its efforts to locate responsive documents and also how it could be that CIP acted as "the developer for the Subject Properties and performed tasks relating to the development process such as securing financing, obtaining the necessary public approval, and coordinating construction," (Filing No. 79, at CM/ECF p. 7), but yet has no possession or control over contracts related to the property design. The court can also require CIP to state, under oath, that all documents responsive to Requests 15 and 16—including any marketing documents—have been produced.

Accordingly,

IT IS ORDERED that HPA's motion to compel, (Filing No. 75), is granted in part and denied in part. On or before August 3, 2020, and as limited to 10- and 11- unit buildings, CIP shall

1) To the extent it has not already done so, produce the documents in its possession or control which state any revenue received by CIP and/or Studio 951, related to the Villas at Falling Water, the Villas at Mahoney Park, the North Pointe Villas, and the Villas of Omaha at Butler Ridge (see Requests 27, 41, 55, and 69 as modified by footnote 3);

2) a) Explain, in detail, its efforts to locate documents responsive to Requests 15 and 16; b) Explain how it could be the developer for the Subject Properties and perform tasks relating to the development process such as securing financing, obtaining the necessary public approval, and coordinating construction, yet not have possession or control over any contracts related to the design of that property; and c) State that all documents responsive to Requests 15 and 16— including any marketing documents—have been produced. CIP's responses to Requests 15 and 16 as required under this order shall be signed under oath; and

3) Fully respond to Interrogatory Nos. 7 and 8 and Requests for Production Nos. 4, 23, 24, 36, 37, 50, 51, 64, 65, 78 and 79.

July 14, 2020.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge