IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HUMPHREYS & PARTNERS ARCHITECTS, L.P., | **4:19CV3046** |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| COMMERCIAL INVESTMENT PROPERTIES, INC., STUDIO951, LTD., LUND COMPANY, and  EAST LAKE FLATS, LLC, | |
| Defendants. | |

Pending before me is the motion filed by Defendant Commercial Investment Properties, Inc. ("CIP") for an order compelling Plaintiff Humphreys & Partners Architects, LP ("HPA") to respond to written discovery requests. (Filing No. 128).

BACKGROUND

HPA is an architectural firm. As relevant to this case, CIP develops and manages apartment complexes. In 2000 and 2002, HPA created architectural design plans to build two "Big House" apartment complexes for CIP. Thereafter, CIP allegedly used HPA's copyright-protected "Big House" apartment plans, or derivatives of those plans, to build five additional apartment complexes in Lincoln and Omaha, Nebraska ("the Subject Properties") in purported violation of HPA's copyrights.

The "Big House" designs at issue are multiple-unit buildings contained in a single structure "with exterior features designed and arranged so that the structure appears to be a 'large, upscale, single family house.'" (Filing No. 129 at CM/ECF

p. 1) (quoting Filing No. 50 at CM/ECF p. 3, ¶ 10) (Second Amended Complaint). The parties disagree whether CIP committed any actionable copying of the Big House designs when CIP designed and developed the Subject Properties. The parties agree, however, that should liability attach to CIP's purported infringement in violation of federal copyright law (see 17 U.S.C. § 101 et seq.), the recovery available to HPA is governed by 17 U.S.C. § 504(b).

There are two types of remedies available to a prevailing copyright owner under 17 U.S.C. § 504(b): 1) "the actual damages suffered by him or her as a result of the infringement," and 2) "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). Throughout this lawsuit, the parties' disparate readings of § 504(b) have informed each party's position on the relevancy of the opposing party's discovery.

In a prior discovery dispute, the court was required to weigh in on whether HPA's requested discovery was relevant to the second category of damages under § 504(b); that is, the extent to which CIP profited from its alleged infringement on HPA's Big House designs. HPA moved for an order compelling CIP to produce documents related to rent and other revenue purportedly received by CIP for the Subject Properties (Filing No. 75). In response to HPA's earlier motion, the court compelled CIP to produce certain documents detailing the rent, development fees, and management fees collected for the Subject Properties. (Filing No. 87). The court reasoned that the disputed revenue was "arguably attributable to CIP's use of HPA's copyrighted designs" and was potentially relevant to calculating recoverable infringer profits under § 504(b). (Filing No. 87 at CM/ECF p. 7). The undersigned noted the parties' competing interpretations of the § 504(b) damages provision, and in allowing the discovery requested, concluded:

2

under the facts presented, a fully developed record is needed when deciding whether gross revenues from the Big House apartments are attributable to infringing on HPA's designs. With discovery in hand, each side can then offer evidence as to the amounts attributable to the alleged design infringement, with the defendant bearing the burden of establishing the elements of profit attributable to factors other than the copyright work.

([Filing No. 87 at CM/ECF p. 8](#)).

Now, CIP is the moving party, and it moves to compel discovery relevant to the first category of § 504(b) damages; that is, HPA's "actual damages" arising from the alleged infringement. CIP requests certain information related to the revenue of HPA, arguing HPA should be compelled to produce its revenue information, particularly since it previously demanded and received CIP's revenue information. HPA disagrees, arguing information related to its revenue is wholly irrelevant to determining HPA's damages under § 504(b). ([Filing No. 131](#)). HPA argues that the information requested is not the mirror-image equivalent of the previously compelled revenue documentation and that the court should reject CIP's argument seeking to characterize it as such. ([Filing No. 131 at CM/ECF pp. 1-2](#)).

The court conducted a discovery dispute conference with the parties on June 4, 2021. After hearing the parties' respective positions, the court requested formal briefing on this issue prior to ruling on the discoverability of any of the requested materials. The matter was fully submitted on July 9, 2021. Now, being fully advised, the court finds that CIP's motion should be granted in part and denied in part as outlined in this order.

ANALYSIS

The scope of discovery in a civil case is governed by Federal Rule of Civil Procedure 26, as amended December 1, 2015. Rule 26(b)(1) provides that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The burden of demonstrating the proportionality of the requested information is a collective responsibility between the parties and the court. But the party requesting discovery bears the initial burden of showing how the requested information is important to the issues and to case resolution. Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir.1992). A party requesting discovery must present a threshold showing of relevance before parties are required to "open wide the doors of discovery" and "produce a variety of information which does not reasonably bear" upon the issues before the court. Id.

Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). Instead, it must be reasonably calculated to lead to the discovery of admissible evidence.

> While the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that inadmissibility is no grounds for objection to discovery. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253

4

(1978); Culligan v. Yamaha Motor Corp., USA, 110 F.R.D. 122
(S.D.N.Y. 1986)), this often intoned legal tenet should not be
misapplied so as to allow fishing expeditions in discovery. Some
threshold showing of relevance must be made[.]

CFGenome, LLC v. Streck, Inc., 2019 WL 913848, at *5 (D. Neb. Feb. 25, 2019)
(quoting Doe v. Nebraska, 788 F.Supp.2d 975 (2011)) (cleaned up).

At issue here are three document production requests. The court will
address each.

I.    Request Nos. 15 and 16

CIP's Request Nos. 15 and 16 seek interrelated discovery. Request No. 15
asks HPA to "produce all documents, correspondence, and ESI sufficient to show
[HPA's] yearly revenues from professional services (not related to infringement
claims) for each of the last 10 years." (Filing No. 129 at CM/ECF p. 4). And Request
No. 16 asks HPA to "produce all documents, correspondence, and ESI sufficient
to show [HPA's] yearly revenues from any other source of income other than
infringement claims and professional services for each of the last 10 years." (Filing
No. 29 at CM/ECF p. 5). During the meet and confer process, CIP agreed to limit
the foregoing requests to revenue from professional services and any other source
of income attributable only to the "Big House" design at issue here, (Filing No. 129
at CM/ECF p. 6).

CIP argues that the requested Big House revenue information is relevant to
"assess the credibility of any amounts [HPA] seeks in this case." (Filing No. 129 at
CM/ECF p. 6).  CIP asserts HPA is seeking to recover both categories of damages
available under §504(b)--its actual damages and CIP's profits attributable to the
alleged infringement—and that as a result, HPA's claimed damages make the Big

House revenue generally relevant. (Id) (emphasis in original). CIP claims that HPA is "hard-pressed" to argue that its Big House revenue is irrelevant "when it is seeking lost Big House revenues as part of its damages in this case." (Id).

HPA disagrees, arguing its revenue from other Big House projects is wholly irrelevant. HPA asserts and clarifies:

> CIP states that "Humphreys is seeking its lost profits…" (Doc. 129, p. 6). That is incorrect and if that was said at the June 4, 2021 phone conference, counsel apologizes for the misstatement. <u>"Lost profits" of the copyright owner is not the correct measure of damages under Section 504(b).</u>[1]

(Filing No. 131 at CM/ECF p. 1, fn. 1) (emphasis added).

The scope of HPA's claim for actual damages was not clearly spelled out in its complaint, which lead to a disagreement (or perhaps a misunderstanding) as to the damages being sought by HPA. But HPA's briefing does limit the scope of its actual damages claim to the contractual amount it would have received from CIP as payment for the plans at issue. CIP's reply does not explicitly address that HPA is <u>not</u> seeking its lost profits in this case. Without mentioning the lost profits dispute, CIP argues that it is "entitled to run down potential evidence and potential arguments, and it is evident that the information/documents sought is relevant to damages. Despite Plaintiff's hyper-technical approach as to what documents are relevant under the Copyright damages statute…[.]" (Filing No. 136 at CM/ECF p. 4).

---

[1] Any discrepancies between HPA's assertions during conferences with court and the position taken in its briefing will be resolved by the court in favor of HPA's <u>briefed</u> position. The court ordered formal briefing for that very purpose – to memorialize and clarify the parties' positions.

In summary, HPA's complaint does not specifically identify what it seeks to recover as actual damages. But on this motion, CIP premises its relevancy assertion on the theory that HPA is seeking lost profits, (Filing No. 129 at CM/ECF p. 6); HPA responds that it is not seeking lost profits as a measure of damages, (Filing No. 131 at CM/ECF p. 1, fn. 1); and CIP replies that it remains entitled to the requested discovery so it can probe "potential" arguments HPA may later assert. (Filing No. 136 at CM/ECF p. 4).[2]

HPA argues that the proper measure of its "actual damages" in this case has no relation to the generalized fair market value of the Big House design plans, explaining that under its reading of § 504(b), "actual damages" allows recovery of only the amount CIP itself would have been obligated to pay to "re-use" the Big House designs for the Subject Properties:

> Therefore, the question becomes "what would Humphreys have charged CIP for these designs?" If CIP had never done business with Humphreys then it might have an argument as to why what Humphreys typically charged for design work was relevant. But in this case, there is no need to guess what Humphreys might have charged CIP. It is known from their past dealings and contracts between the parties.

(Filing No. 131 at CM/ECF p. 3).

Under the current posture of this case, HPA's claim for actual damages is defined as, and limited to, "the amounts that CIP would have had to pay for use of its copyrighted works." (Filing No. 131 at CM/ECF p. 2). CIP's relevancy argument

---

[2] There has been no judicial determination as to the scope of § 504(b) damages recoverable in this case—whether as actual damages or as disgorgement of profits. Those substantive legal questions will and must be decided by the district judge assigned to this case. Here, the undersigned magistrate judge need not, and does not, resolve any question as to whether "lost profits" can be recovered as actual damages under 17 U.S.C. § 504(b). That issue is moot because HPA now unequivocally states that is not seeking its "lost profits" as a measure of damages.

is premised on the apparent misconception that HPA is seeking (or may later seek) to calculate its actual damages in a much broader fashion. But HPA's statements have curtailed that argument. Since HPA is seeking as actual damages only the specific amounts CIP would have been contractually obligated[3] to pay for re-use of the Big House Design plans, CIP does not need information regarding what other buyers have paid for the plans at issue or the overall revenues HPA has received from conveying licenses to use the plans. (Filing No. 129 at CM/ECF pp. 5-6).

Because CIP's relevancy premise appears to be incorrect, the court finds that CIP has failed to make a threshold showing, based on the record before the court, that the information sought in both Request No. 15 and Request No. 16 is relevant for the purpose of discovery.

The court is cognizant that it previously allowed broad discovery from CIP of information that might not ultimately be admissible on the damages question. (Filing No. 87). Had the instant information truly been the mirror-image of that earlier discovery, the result here would have been different. However, since HPA unequivocally asserts that it is limiting its actual damages demand to amounts CIP would have paid for re-use of the disputed designs, HPA's general revenue information that could either support or disprove its lost profits is not relevant.

The court is relying on HPA's representations in resolving the pending discovery dispute. And HPA will be bound by those assertions. HPA may not later

---

[3] The court is assuming there is an amount set (or calculable) under the terms of the parties' contract for CIP's re-use of the Big House design. If that assumption is incorrect, CIP may be able to obtain information showing how much other users paid HPA for similar re-use of similar design plans. But even then, the scope of CIP's discovery is broader than necessary for the limited "actual damages" HPA is seeking.

If the court is incorrect regarding the pricing or pricing guidelines within the contract terms between HPA and CIP, the parties are encouraged to discuss and resolve, without court intervention, any remaining discovery issue as to HPA's narrowed demand for actual damages.

attempt to argue for recovery of broader actual damages after it has taken the clear position for discovery purposes that it is not seeking them. HPA will be foreclosed from arguing on dispositive motion or otherwise that § 504(b) allows it to recover any actual damages other than the contractual amounts CIP would have purportedly been obligated to pay for the designs. And, since recovery of HPA's general lost profits is no longer a potential theory HPA may raise, CIP's claim that it is entitled to discovery on the issue of HPA's lost profits is moot.

In sum, the court denies CIP's motion to compel as to Request No. 15 and 16 for failure to make a threshold relevancy showing. Hofer, 981 F.2d at 380.

II.    Request No. 14

Request No. 14 asks HPA to "produce all documents, correspondence, and ESI sufficient to show your yearly revenues from infringement allegations you made against anyone for each of the last 10 years." (Filing No. 129 at CM/ECF p. 4).

The briefing indicates that compromise has been reached as to this request. In its opening brief, CIP asserts:

> CIP has communicated to Plaintiff that it is willing to narrow this request to only settlement documents for lawsuits pursued by Plaintiff that involve the "Big House" design. Plaintiff expressed concern regarding the confidentiality of the settlements contained in the relevant agreements. However, Plaintiff's concerns regarding the confidentiality of these settlements can be addressed by designating the materials in accordance with the Protective Order already entered in this case. CIP is entitled to review these materials, and, particularly with the narrowing provided, the items sought are within the realm of discoverable information. Plaintiff has indicated that it is willing to produce these materials, but as of the date of this Motion the items have not been produced.

9

([Filing No. 129 at CM/ECF p. 4](#)) (emphasis added). HPA indicates in response that it has "agreed to produce any settlement agreements of litigation that involved any other Big House designs." ([Filing No. 131 at CM/ECF p. 7](#)). HPA states that there are four lawsuits responsive to the narrowed request and that it "believe[s]" that there are six settlement agreements. HPA indicates that it is locating copies of those agreements to be produced. In its briefing, HPA reserves the right to allow the other parties to a settlement agreement an opportunity to object to production (if the settlement agreement in question includes a provision allowing for such objection).

Request No. 14 is not addressed in CIP's reply brief. Thus, it appears from the record that the parties have reached a compromise on this request and that CIP does not object to the limitations discussed by HPA in its opposition brief.

For clarity and in the interest of maintaining a clear timeline, the court will compel production of the settlement agreements (to the extent they have not already been produced), subject to the parties' agreed-to limitations contained in the briefing. HPA shall produce copies of the six settlement agreements it has located, with an obligation to produce other agreements responsive to the narrowed request if HPA becomes aware of the same. If a party to any of those agreements objects to production, HPA shall immediately inform the court of that objection so that the issue may be resolved in prompt fashion.

Accordingly,

IT IS ORDERED:

1)      CIP's motion (Filing No. 128) is denied as to Request Nos. 15 and 16 and granted as to Request No. 14 (subject to the parties' agreed-to limitation). On or before August 27, 2021, HPA shall produce any documents responsive to Request No. 14 not previously produced to CIP.

2)      Since the court has relied on HPA's briefing in issuing this order, HPA is bound by that briefing. As such, HPA's actual damage recovery is limited to the contractual amounts CIP would have purportedly been obligated to pay for re-use of the Big House designs at issue. HPA cannot recover its lost profits as actual damages in this case. The parties shall include a reference to this order limiting the scope of actual damages and precluding recovery of lost profits in any later briefing on the issue of damages and, if this case will be tried, in the "Uncontroverted Issues" section of Pretrial Conference Order.

Dated this 10th day of August, 2021.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

11